IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA )
)
v )  CIVIL ACTION NO.
)  2:04CV455-WHA-VPM
BRADLEY JOSEPH STEIGER )  [WO]

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

This matter is before the court on a motion by federal inmate BRADLEY JOSEPH

STEIGER ["Steiger"] to vacate, set aside, or correct his sentence pursuant to 28 U.S.C.

§ 2255.

On 19 July 2001, a jury found Steiger guilty of sexual exploitation of children, a

violation of 18 U.S.C. § 2251(a) (Count I); possession of a computer or other storage media

containing child pornography, a violation of 18 U.S.C. § 2252A(a)(5)(B) (Count III); and

receipt of child pornography, a violation of 18 U.S.C. § 2252(a)(2)(A) (Count IV).  On 25

October 2001, the district court sentenced Steiger to 210 months of imprisonment on Count

I, 60 months on Count III, and 180 months on Count IV.  The sentences were ordered to run

concurrently.

Steiger appealed to the Eleventh Circuit Court of Appeals, and on 14 January 2003,

that court affirmed his conviction in a published opinion.[1]  Steiger filed a petition for a writ of certiorari in the United States Supreme Court, which that court denied on 19 May 2003.  *Steiger v. United States*, 538 U.S.1051 (2003).

On 14 May 2004, Steiger filed this § 2255 motion,[2] asserting numerous substantive claims as well as numerous claims that his trial and appellate counsel were ineffective for a variety of reasons.[3]  The government responded to Steiger's § 2255 motion, asserting that his claims are either procedurally barred or without merit.  Steiger responded in opposition to the government's submissions.  After careful consideration of Steiger's § 2255 motion, the

---

[1]*See United States v. Steiger*, 318 F.3d 1039 (11th Cir. 2003).  On appeal, Steiger raised several issues related to the following general claims:

    (1)    An anonymous computer hacker who provided information to police concerning Steiger was an agent of the government, and thus the hacker's search of Steiger's computer files violated his Fourth Amendment rights.

    (2)    The government's search warrant affidavit omitted material information by failing to state that the hacker had obtained information about Steiger through the unauthorized search of his computer files.

    (3)    The hacker intercepted electronic communications involving Steiger in violation of the Federal Wiretap Act (18 U.S.C. §§ 2510-2522), and the Act's provisions required suppression of any such communications.

[2]Although Steiger's § 2255 motion was date-stamped "received" in this court on 10 May 2004, under the "mailbox rule," the court deems his motion filed on the date he delivered it to prison authorities for mailing, presumptively, 4 May 2004, the day that he signed it.  *See Houston v. Lack*, 487 U.S. 266, 271-72 (1988); *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001).

[3]Steiger lists 60 numbered grounds for relief in his motion.  However, many of these grounds overlap with others, are repetitious, or are not presented in a logical fashion.  In addition, Steiger buries a number of sub-issues within his numbered grounds.  For organizational and analytical purposes, the court's Recommendation condenses some of the grounds asserted separately into a single claim for relief.  In addition, the court recasts some of Steiger's claims in a more appropriate presentation.

submissions supporting and opposing the motion, and the record in this case, the court concludes that an evidentiary hearing is unnecessary and that, pursuant to Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, the motion should be denied.

## II.  FACTS

On 16 July 2000, an anonymous source ("anonymous source" or "source") sent an e-mail to the Montgomery, Alabama, Police Department ("MPD") stating that he had found a child molester on the internet.  The source further stated that he knew the person's name, internet account, and home address and asked, "Can I send all the pics and info I have to these emails?"  The source also attached to the e-mail an image file containing a picture of an adult male sexually abusing a young female who appeared to be approximately four to six years of age.  Captain Kevin Murphy of the MPD read the e-mail and viewed the attached picture.

On 17 July 2000, Captain Murphy replied to the e-mail and asked the anonymous source to call him at his office to discuss the information.  The source answered that he was from Turkey[4]  and could not afford an overseas phone call, but could send everything by e-mail.  Murphy then sent an e-mail to the source stating:  "Please feel free to send the

---

[4]In this and other e-mail exchanges with law enforcement officers, the anonymous source stated that he resided in Turkey and that he did not speak fluent English.  All efforts by government investigators to ascertain the anonymous source's identity and actual location proved fruitless.

information that you have."  The source next sent Murphy an e-mail with eight attached pictures, several of which showed an adult male sexually molesting a young girl.  In the e-mail, the source identified the molester as "Brad Steiger" and provided Captain Murphy with Steiger's home address and fax number.  In addition, the source provided the telephone numbers used by Steiger for internet access and stated that he also had the IP ("Internet Protocol") address for Steiger's computer.

Captain Murphy viewed the eight pictures attached to the e-mail from the anonymous source, and, on 19 July 2000, asked the source to send Steiger's IP address, which the source sent the same day.  Apparently without being asked to do so, the source sent another e-mail to the MPD that provided Steiger's financial records.  On 21 July 2000, the source sent another e-mail that identified specific folders where pornographic pictures were stored on Steiger's computer.

According to the anonymous source, he obtained the information concerning Steiger through a trap to catch child pornography collectors.   In order to lure collectors of child pornography, the source posted a fake picture with a suggestive title in an internet news group frequented by pornography enthusiasts.  Unbeknownst to the individuals who downloaded the picture, the source attached an undetectable Trojan Horse program entitled "subseven" to the fake picture.  After Steiger downloaded the fake picture, the Trojan Horse program allowed the source to hack into Steiger's computer via the internet and find the images and identifying information that he sent the MPD.

Captain Murphy collected all the information provided by the anonymous source and referred it to Special Agent Margaret Faulkner of the FBI, who viewed the images and corroborated the details the anonymous source provided in his first two e-mails. Agent Faulkner next sought a warrant to search Steiger's home in Hope Hull, Lowndes County, Alabama. After obtaining the search warrant, law enforcement officers searched Steiger's home and seized his computer and other incriminating evidence, including storage media found to contain additional pictures of Steiger engaged in explicit sexual activity with a minor. Based on the evidence seized, the government sought and obtained an indictment charging Steiger with violations of various federal statutes involving sexual exploitation of minors.

## III.  DISCUSSION

### A.      *Denial of Access to the Courts*

This court first addresses Steiger's allegation that the government created an impediment to his filing "a meaningful § 2255 motion" by denying him access to legal materials in violation of his constitutional right of access to the courts. *See § 2255 Motion* (Doc. # 1- Attachment A) "Ground 1" at 1-2. Specifically, Steiger contends that he was "in transit" between different prison facilities for nine months of "the critical twelve-month period" between the Supreme Court's denial of his petition for certiorari and the deadline for filing his § 2255 motion, during which time, he says, he was "separated from a law library

[and] separated from the legal documents necessary to research claims." *Id*. at 1.  In addition, Steiger asserts that, after his incarceration in the federal correctional facility in Butner, North Carolina, prison officials confiscated or lost portions of his legal materials and refused to receive shipments of legal materials that had been mailed to Steiger by the Federal Defenders Office in Alabama. *Id*. at 1-2.  Steiger also contends that the Federal Defenders Office failed to provide him with requested legal materials after "numerous verbal and written requests in November 2003 and January 2004."[5]  *Id*. at 2.

To prevail on a claim that his right of access to the courts has been violated, Steiger must demonstrate the existence of an "actual injury," i.e., that his lack of access to his legal materials hindered his efforts to pursue a nonfrivolous legal claim.  *See Lewis v. Casey*, 518 U.S. 343, 348-54 (1996).  Steiger's cursory allegations do not entitle him to any relief.  For example, Steiger fails to explain how his alleged lack of access to legal materials prevented his pursuit of a specific nonfrivoulous legal claim.

Furthermore, the myriad claims that Steiger has presented and the lengthy supporting arguments[6] indicate that the challenged government conduct did not    - to any measurable

---

[5]In an affidavit filed with this court, Jennifer A. Hart, an attorney with the Federal Defenders Office in Montgomery and Steiger's counsel on direct appeal, avers that Steiger was provided with copies of all transcripts in his case as well as copies of case law that he requested.  *See Affidavit of Jennifer A. Hart* (Doc. # 24) at 3.  In addition, Hart avers that an investigator from her office traveled to the Elmore County, Alabama, jail when Steiger was housed there and delivered copies of Steiger's legal papers to him at his request.  *Id*.

[6]Steiger's motion is over 190 pages in length; his response to the government's answer is over 60 pages in length.

extent - thwart him from pursuing his claims in this collateral proceeding. Rather, Steiger

has demonstrated that he is fully capable of presenting and arguing claims to this court.

Accordingly, this court concludes that Steiger's access-to-court claim provides no basis for

relief.


**B.    *Substantive Claims Raised and Resolved on Direct Appeal***

Though Steiger has in many instances attempted to recast the claims, the court finds

that the following claims in Steiger's motion were presented to the Eleventh Circuit in his

direct appeal:

1.    Steiger was "the victim of an unlawful act of electronic surveillance performed by the government" because the unknown anonymous source who originally notified law enforcement officers of Steiger's unlawful activity after hacking into Steiger's computer was not a private party but rather was a governmental agent who, by his actions, conducted an unlawful search of Steiger's computer. *See § 2255 Motion* (Doc. # 1- Attachment A) "Ground 2" at 3-13 and "Ground 56" at 184.

2.    This court failed to litigate fact issues related to the search warrant affidavit in a "full and fair manner," specifically the issue of whether the anonymous source possessed the evidence obtained from Steiger's computer before Captain Kevin Murphy of the Montgomery, Alabama, Police Department asked the anonymous source to forward the evidence to him. *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 5" at 20-25.

3.    There were material omissions from, and misrepresentations in, the search warrant affidavit, which misled this court in its determination that there was probable cause for issuance of the warrant to search Steiger's residence and to seize his computer and related evidence. *See § 2255 Motion* (Doc. # 1 -

Attachment A) "Ground 8" at 32-36 and "Ground 9" at 37-44.

4.      The magistrate judge who issued the search warrant was "misled" and/or "failed to manifest the neutrality and detachment demanded of a judicial officer," as evidenced by the fact that the search warrant affidavit did not contain sufficient facts for a finding of probable cause for issuance of the warrant. *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 12" at 49-51.

5.      The magistrate judge who issued the search warrant failed to "consider the implications of the Wiretap Act" in finding probable cause for the search warrant. *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 13" at 52-53.

6.      Captain Murphy's opening and viewing of image files from Steiger's computer sent to him by the anonymous source as e-mail attachments amounted to an unlawful warrantless search. *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 14" at 54-59.

7.      The district court failed to adjudicate the lawfulness of the actions of the anonymous source pursuant to the Wiretap Act and erred in concluding that suppression of evidence was not a remedy under the Act in Steiger's case. *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 49" at 149-56.

8.      The district court erred in concluding that the government did not know of or acquiesce in any unlawful conduct of the anonymous source before he contacted law enforcement officers and that FBI Agent Margaret Faulkner did not intentionally omit material evidence from the search warrant affidavit. *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 54" at 177-82.

The Court of Appeals found these claims to be meritless and decided the attendant issues

adversely to Steiger. *See United States v. Steiger*, 318 F.3d 1039 (11th Cir. 2003).

      "The district court is not required to reconsider claims of error that were raised and

disposed of on direct appeal." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *see also United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981). If a claim has previously been raised on direct appeal and decided adversely to a defendant, it cannot be re-litigated in a collateral attack under § 2255. *See Nyhuis*, 211 F.3d at 1343. Furthermore, "[a] rejected claim does not merit rehearing on a different, but previously available, legal theory." *Id*. Because the substantive claims listed above were raised and resolved in Steiger's direct appeal, this court will not reconsider those claims.

Steiger also presents the following claims directly challenging rulings by the Court of Appeals:

1.   The Court of Appeals' finding that the anonymous source possessed the evidence obtained from Steiger's computer before Captain Murphy asked the anonymous source to forward the evidence to him was "entirely unreasonable." *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 6" at 26-29.

2.   The Court of Appeals erred in concluding that his case did not present a violation of the Wiretap Act. *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 50" at 157-65.

3.   The Court of Appeals erred in concluding that suppression of evidence was not a remedy under the Wiretap Act in Steiger's case. *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 51" at 166-70.

It is beyond the purview of this court to review rulings by the Court of Appeals. *See Butcher v. United States*, 368 F.3d 1290, 1299-1300 (11th Cir. 2004) (district court may not grant § 2255 relief that is inconsistent with law of the case established by the appellate court's decision). Accordingly, this court will not consider Steiger's claims alleging error

in the Court of Appeals' rulings.

Steiger also presents the following claim, which, albeit critical of the district court's ruling, actually implicates a ruling made by the Court of Appeals:

- In adjudicating claims raised in Steiger's motion for a new trial based on newly discovered evidence, the district court, rather than making its own findings of fact, improperly relied on the Court of Appeals' finding that the anonymous source had possession of the evidence obtained from Steiger's computer prior to Captain Murphy's request that the anonymous source forward the evidence to him. *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 53" at 173-76.

Even assuming that Steiger's unsupported assertion that the district court did not do its own factfinding in this regard is correct, Steiger's claim is precluded, because the law of the case is now the Court of Appeals' finding regarding the time that the anonymous source possessed evidence from Steiger's computer. Thus, the district court cannot review that ruling.[7] The law of the case doctrine "bars relitigation of issues that were decided, either explicitly or by necessary implication, in an earlier appeal of the same case." *United States v. Jordan*, 429 F.3d 1032, 1035 (11th Cir. 2005).

## C.   *Substantive Claims Not Raised on Direct Appeal*

The following substantive claims asserted by Steiger in his § 2255 motion were not

---

[7]Steiger's motion for a new trial based on newly discovered evidence (Case No. 2:00CV170-WHA - Doc. # 244) was filed on 22 November 2002 while his direct appeal was pending. The Eleventh Circuit affirmed his conviction, by published opinion, on 14 January 2003. The district court entered its order denying the motion for new trial on 16 September 2003 (Case No. 2:00CV170-WHA - Doc. # 279).

raised in his direct appeal.:

1.    He was denied a fair trial due to the district court's failure to properly adjudicate a claim of unlawful surveillance pursuant to 18 U.S.C. § 3504.

2.    He was denied a fair trial due to the government's withholding and destruction of material, exculpatory, and relevant evidence.

3.    He was denied a fair trial due to the government's withholding of exculpatory impeachment evidence until it could no longer be effectively used.

4.    He was denied a fair trial due to his unlawful arrest prior to the execution of the search warrant.

5.    He was denied a fair trial due to the unlawful seizure of items not listed in the search warrant.

6.    He was denied a fair trial due to the government's manufacture and alteration of evidence.

7.    He was denied a fair trial due to the use of a "government agent" to obtain incriminating statements from him in a recorded telephone conversation.

8.    He was denied a fair trial due to government's intentional racial discrimination in grand jury selection.

9.    He was denied a fair trial due to prosecutorial misconduct before the grand jury.

10.    He was denied a fair trial due to the perjured testimony and manufactured evidence provided by government agents.

11.    He was denied a fair trial due to an unduly suggestive identification procedure.

12.    His First Amendment rights were violated as a result of the failure of the magistrate judge who issued the search warrant to

view the image files from his computer in order to make an
independent determination of their obscenity.

13.     He was denied a fair trial because he did not receive the benefit
        of the statutory affirmative defense to the charge of possession
        of a computer containing child pornography.

14.     Title 18 U.S.C. § 2252A(a)(5)(B) is facially invalid under the
        Commerce Clause and was unconstitutionally applied to him.

15.     He was denied a fair trial due to the use of fabricated evidence
        that was produced using computer-imaging technology.

16.     He was denied his Sixth Amendment right to confront witnesses
        against him when the e-mails with attached pictures that the
        anonymous source sent to law enforcement officers were
        admitted into evidence at trial.

17.     The prosecutor's closing argument was improper because he
        made a reference to the Christian Bible and because he made a
        statement that was not supported by the evidence and was highly
        prejudicial.

18.     The district court was without subject matter jurisdiction to try
        him because the evidence presented to the grand jury was
        insufficient to charge him.

19.     The evidence was insufficient to support his convictions.

20.     He did not consent to this court's jurisdiction to try him and
        never entered any contract or commercial agreement to be tried.

21.     There were various errors in his sentencing.

Ordinarily, if an available claim is not advanced on direct appeal, it is deemed

procedurally barred in a § 2255 proceeding. *See Mills v. United States*, 36 F.3d 1052, 1055-

56 (11th Cir. 1994); *Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989).  A

petitioner can avoid this procedural bar only by showing both cause for the failure to raise the claim on direct appeal and actual prejudice arising from that failure. *See United States v. Frady*, 456 U.S. 152, 167-68 (1982); *Mill*s, 36 F.3d at 1055. Steiger suggests that ineffective assistance of counsel is the cause for his failure to raise these claims on direct appeal. *See Reply to Government's Response* (Doc. # 40) at 27-28.

Ineffective assistance of counsel may satisfy the cause exception to a procedural bar, *see Greene*, 880 F.2d at 1305, but only if the claim of ineffective assistance is meritorious. *Id*. To determine whether it is, this court must decide whether counsel's failure to assert the underlying substantive claims could have affected the outcome of Steiger's appeal. *See Nyhuis*, 211 F.3d at 1344. Appellate counsel is not ineffective for failing to raise meritless claims. *Id*. Because this court concludes, as discussed more fully below, that Steiger's underlying claims lack merit, he has failed to demonstrate cause for his procedural default.

Steiger also asserts additional, independent claims of ineffective assistance of trial and appellate counsel. Those claims are also reviewed below in this court's discussion of Steiger's allegations of ineffective assistance of counsel.

### D.     *Ineffective Assistance of Counsel*

The Sixth Amendment right to counsel exists to protect the fundamental right to a fair trial. To succeed on a claim of ineffective assistance of counsel, a movant must satisfy both prongs of the test set out by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668

(1984).  The performance prong requires a movant to establish that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel guaranteed by the Sixth Amendment.  *Id*. at 687-89.  The prejudice prong requires a movant to demonstrate that seriously deficient performance of his counsel prejudiced the defense.  *Id*. at 687.

Under the performance component of the *Strickland* inquiry, a movant must establish that his attorney's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  *Id*.  In other words, criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance.  *Roe v. Flores-Ortega*, 528 U.S. 470, 476 (2000) (quoting *Strickland*, 466 U.S. at 687).

There is a strong presumption that counsel's performance was reasonable and adequate, and great deference is shown to choices dictated by reasonable trial strategy. *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994); *see Strickland*, 466 U.S. at 689.  Review of an ineffective assistance of counsel claim is conducted from the perspective of defense counsel, based on facts "as they were known to counsel *at the time of the representation*." *United States v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992) (emphasis in original); *see Strickland*, 466 U.S. at 690.

The prejudice component of *Strickland* focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.

14

*See Strickland*, 466 U.S. at 687.  Unreliability or unfairness is not established if counsel's assistance did not deprive the defendant of any constitutionally protected right.  *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000).  To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"  *Strickland*, 466 U.S. at 694.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*

Unless a movant satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied.  *Strickland*, 466 U.S. at 687.  Accordingly, once a court decides that one of the requisite showing has not been made, it need not decide whether the other one has been.  *Id*. at 697 (A court need not "address both components of the inquiry if the [movant] makes an insufficient showing on one."); *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998) ("if a defendant cannot satisfy the prejudice prong, the court need not address the performance prong").

A criminal defendant's right to effective assistance of counsel continues through direct appeal.  *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  Ineffective assistance of appellate counsel may be shown if the movant can "establish ... that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.... Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."  *Mayo v. Henderson*, 13 F.3d 528, 533 (2nd Cir. 1994).

**1.      Ineffective Assistance: Otherwise Defaulted Claims**

Steiger contends that the ineffective assistance of his appellate counsel excuses his

failure to raise each of the following – otherwise defaulted – claims on direct appeal.

        *a.      District Court's Adjudication of Claim Pursuant*
           *to 18 U.S.C. § 3504*

Steiger contends that he was denied a fair trial because of the district court's failure

to adjudicate properly a claim of unlawful surveillance pursuant to 18 U.S.C. § 3504.  *See*

*§ 2255 Motion* (Doc. # 1 - Attachment A) "Ground 3" at 14-16.

When an aggrieved[8] person claims that the government has gained evidence from

unlawful surveillance, the government has a duty to affirm or deny the claim of unlawful

surveillance pursuant to 18 U.S.C. § 3504.  Section 3504 provides, in pertinent part:

> (a)  In any trial, hearing, or other proceeding in or before any court,
> grand jury, ... or other authority of the United States –
>
> > (1) upon a claim by a party aggrieved that evidence is
> > inadmissible because it is the primary product of an unlawful act
> > or because it was obtained by the exploitation of an unlawful
> > act, the opponent of the claim shall affirm or deny the
> > occurrence of the alleged unlawful act;
> >
> > ....
> >
> > (b) As used in this section "unlawful act" means any act [involving] the
> > use of any electronic, mechanical, or other device (as defined in section

---

[8]An "aggrieved person" is "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed."  18 U.S.C. § 2110(11).

2510(5) of this title [the Federal Wiretap Act]) in violation of the Constitution or laws of the United States or any regulation or standard promulgated pursuant thereto.

Prior to trial, pursuant to § 3504, Steiger requested the government to affirm or deny the occurrence of an alleged unlawful act, i.e., the unknown anonymous source's search and seizure of information from Steiger's home computer.  The government responded to Steiger's request, acknowledging the manner in which the anonymous source had obtained the evidence from Steiger's computer but arguing that the evidence was admissible because it was not obtained in violation of the Fourth Amendment or the Federal Wiretap Act.  The district court ruled that the government's response satisfied the requirements of § 3504.

"[T]he adequacy of the government's denial of illegal electronic surveillance is dependant upon the specificity of the witness' claim of illegality."  *In re Grand Jury Proceedings*, 831 F.2d 228, 230 (11th Cir. 1987).  Steiger contends that the government's response did not satisfy the requirements of § 3504.  However, his contention is based on unsupported conclusory allegations that the government withheld and destroyed evidence pertinent to his request.  Because Steiger has provided nothing more than his own speculative conclusions to support his allegations of impropriety, he has failed to show that the government did not satisfy the requirements of § 3504 in his case.

Steiger appears to suggest that § 3504 provides an independent basis for suppression of unlawfully obtained evidence and that the district court should have excluded the government's evidence pursuant to its provisions.  However, although §3504 establishes the

procedures to be followed when a claim of inadmissibility is made by an alleged aggrieved person, it does not by itself provide for the inadmissibility of any particular piece of evidence. *See Gelbard v. United States*, 408 U.S. 41, 54 (1972). Instead, consideration of § 3504 is triggered by a person's claim that evidence is inadmissible under the Constitution or some other federal law. *See United States v. Shelton*, 30 F.3d 702, 707 (6th Cir. 1994). In this case, Steiger contended that the government's evidence was inadmissible pursuant to the Fourth Amendment and the Federal Wiretap Act. His claims were rejected by the district court and the Court of Appeals.

Steiger has failed to show how the district court's adjudication of his claim of unlawful surveillance pursuant to § 3504 deprived him of a fair trial. Because he fails to establish the merit of this claim, it follows that he is unable to demonstrate that his appellate counsel's failure to raise the claim on appeal fell below an objective standard of reasonableness and prejudiced him. *See Strickland*, *supra*, 466 U.S. at 687-88. Therefore, he has not established that his counsel's ineffectiveness was the cause for his failure to raise this claim on appeal.[9]

### b.    *Withholding and Destruction of Evidence*

Steiger alleges that he was denied a fair trial due to the government's withholding and

---

[9]For the reasons stated, Steiger is, of course, also not entitled to any relief based on his separate claim that his appellate counsel was ineffective for failing to raise the § 3504 issue on appeal. *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 52" at 171-72.

destruction of material, exculpatory, and relevant evidence.  *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 17" at 64-72.  According to Steiger, the government has withheld evidence that, if released, would show that FBI Agent Margaret Faulkner, or some other agent of the government, unlawfully hacked into his computer before it was seized, and/or otherwise tampered with his storage media, in order to obtain incriminating evidence and to alter files so as to fabricate images of "virtual pornography."  *Id*.

However, Steiger has failed to submit anything other than conclusory allegations that the government has withheld or destroyed evidence.  Moreover, he has provided nothing more than his own speculative conclusions to support his claims that an agent of the government hacked into his computer or tampered with his computer files or storage media.  Consequently, Steiger has failed to show that was denied a fair trial due to the government's withholding or destruction of evidence.  Again, the failure of the underlying claim dooms the ineffectiveness claim.[10]

c.      *Government's Failure to Provide 25 July 2000 E-mail During Discovery*

Steiger also contends that the government's failure to provide the defense with a 25 July 2000 e-mail between FBI Agent Murphy and the anonymous source during the

---

[10]Steiger also raises separate claims that his trial and appellate counsel were ineffective for failing to properly investigate and argue issues related to his claim that the government withheld evidence. *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 18" at 73-74 and "Ground 19" at 75-78. Because, as indicated above, he fails to establish the merit of the underlying claim, his separate claims of ineffective assistance entitle him to no relief.

discovery phase of his case denied him his right to a fair trial.  *See § 2255 Motion* (Doc. #
1 - Attachment A) "Ground 20" at 79-80.  Steiger did not learn of the existence of this e-mail
until approximately one year after his sentencing, when it was referenced in an opinion
issued by a United States District Court in Virginia in a case involving evidence against a
suspected child molester obtained by both the same anonymous source in Steiger's case and
Agent Faulkner.[11]  That opinion revealed new information about the anonymous source's
contacts with the government during the investigation of Steiger and indicated that the 25
July 2000 e-mail, the existence of which was theretofore unknown by Steiger, referred to a
United States phone number for the anonymous source; the e-mail also revealed that Agent
Faulkner had attempted to call the anonymous source at this number.  Agent Faulkner never
revealed her attempts to call the anonymous source at this number in any of her pretrial or
trial testimony before this court.  Steiger argues that, if he had been provided with the 25 July
2000 e-mail during discovery, he could have used its contents as impeachment evidence
casting doubt on Agent Faulkner's credibility and in an effort to prove that Agent Faulkner
had hacked into his computer before it was seized.

At a hearing on a motion for new trial based on newly discovered evidence (i.e., the
25 July 2000 e-mail), Agent Faulkner testified that she did not know the reason for the
omission of the e-mail from the packet of information she provided to prosecutors in

---

[11]*See United States v. Jarrett*, 229 F.Supp.2d 503, 504-10 (E.D. Va. 2002), *reversed*, 338 F.3d
339 (4th Cir. 2003).

Steiger's case and that she did not intend to omit the e-mail from Steiger's discovery information. *See 25 August 2003 Hearing on Motion for New Trial* (Case No. 2:00CV170-WHA) at 83. Agent Faulkner also testified that she called the number provided by the anonymous source in late July 2000, during the investigation of Steiger, and reached a "voice mail drop,", i.e., a computerized response that "picks up and says, 'please leave a message.'" *Id*. at 86, 89.

Although Agent Faulkner left a message for the anonymous source, asking him to call her, the anonymous source never returned her call and did not provide any indication in the e-mails that he sent during the investigation of Steiger that he had received Agent Faulkner's message. *Id*. Explaining her failure to mention her attempts to call the anonymous source during her pretrial and trial testimony, Agent Faulkner testified at the new trial hearing that she "did not even think or recall the [anonymous source's] phone number ... after the investigation started, because it did not provide [her] with any information that [she] could use to further [her] case." *Id*. at 46.

Constitutional error results from the government's failure to disclose favorable, exculpatory, or impeachment evidence, "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *See United States v. Noriega*, 117 F.3d 1206, 1218 (11th Cir. 1997) (quoting *Kyles v. Whitley*, 514 U.S. 419, 433 (1995)); *see also United States v. Bagley*, 473 U.S. 667, 678 (1985). A reasonable probability of a different result is shown when the government's

evidentiary suppression "undermines confidence in the outcome of the trial." *Kyles*, 514 U.S. at 434.

Steiger fails to identify any impeachment value inherent in the contents of the 25 July 2000 e-mail that would have been sufficient to discredit Agent Faulkner if the evidence had been available for use in cross-examining her at trial. Thus, he fails to establish a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Steiger also fails to establish that the contents of the e-mail would have facilitated his proving that Agent Faulkner had hacked into his computer before it was seized. His claims, once again, are founded on nothing more than conclusory allegations and unsupported speculative conclusions.

Because Steiger has failed to establish the merit of his substantive claim, there can be no derivative merit to the claim that his appellate counsel was ineffective for failing to raise the claim on appeal.


   *d.*   *Unlawful Arrest*

Steiger alleges that he was denied a fair trial due to his unlawful arrest before the search of his residence. *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 21" at 81-82. However, Steiger fails to establish the illegality of his arrest,  nor does he explain how the circumstances of his arrest affected his right to a fair trial. In fact, the evidence established that Steiger was not arrested before the execution of the search warrant; he was instead

22

arrested several weeks after the search.  Steiger's failure to establish the merit of this claim is the death knell of his ineffectiveness claim.

>     e.     *Seizure of Items Not Listed in Search Warrant*

Steiger contends that he was denied a fair trial due to the unlawful seizure of items that were not listed in the warrant to search his home.  *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 22" at 83-84.

> The search warrant authorized the following property to be seized:
>
> computers, computer images and computer files, disks, electronic mails, videotapes, cassette tapes, child pornography magazines, photographs of minors engaged in the lewd and lascivious display of their genitals, addresses and phone numbers of potential victims of child sexual abuse.

The return on the warrant revealed that law enforcement officers seized the following: videotapes, sex toys, digital cameras, camcorder, miscellaneous medicines and records, photographs, notebook, *-mm tapes, CDs, video camera, laptops, address book, Gateway computer, printer, and floppy disks.[12]

Steiger lists the following as items whose seizure was not authorized under the search warrant: sex toys, digital cameras, camcorder, miscellaneous medicines, CDs, and a video camera.  He apparently contends that law enforcement's seizure of items in executing a search warrant is strictly limited to the items listed on the warrant.  He is incorrect.  It is

---

[12]Law enforcement officers later discovered "memory sticks" or "flash sticks" containing sexually explicit images inside the case of one of the cameras seized during the search.

permissible under the Fourth Amendment to seize things other than those specifically enumerated in the search warrant if they are apparently related to the criminal endeavor under investigation or have a reasonable relation to the purpose of the search.  *See United States v. Kane*, 450 F.2d 77, 85 (5th Cir. 1971) ("Evidence not described in a valid search warrant but having a nexus with the crime under investigation may be seized at the same time the described evidence is seized."); *United States v. McCoy*, 515 F.2d 962, 964 (5th Cir. 1962) ("Although the weapons seized were not described in the search warrant, such evidence having a nexus with the crime under investigation may be seized at the same time as the described evidence.").  *See also, e.g., United States v. Schwarz*, 535 F.2d 160, 163 (2nd Cir. 1976); *United States v. Teller*, 412 F.2d 374, 379 (7th Cir. 1969).  In view of the offense Steiger was suspected of committing and the items listed on the warrant, this court finds that any seized items not listed on the warrant were reasonably related to the purpose of the search that was authorized by the warrant.  Therefore, their seizure was not unlawful.

Even assuming that some of the items seized were not reasonably related to the purpose of the search, Steiger fails to establish that the evidence resulting from the items' seizure, or the items' admission into evidence, deprived him of a fair trial, particularly in light of the overwhelming photographic evidence against him.

Because Steiger fails to establish the merit of this claim, it follows that he has not established that his appellate counsel was ineffective for failing to raise the claim on appeal.

> f.   *Government's Manufacture and Alteration of Evidence*

Steiger maintains that the government manufactured evidence against him by placing images on Sony "memory sticks" after they were seized by law enforcement officers and by creating "zip disks" and a "green disk" containing fabricated incriminating images.  *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 23" at 85-87.  As is the case with any number of Steiger's claims, Steiger's allegations in this regard amount to nothing more than his own speculative and unsupported conclusions.  Thus, he is not entitled to any relief based on this claim.  Having failed to establish the merit of the underlying claim, Steiger likewise fails to establish that his appellate counsel was ineffective for failing to raise the claim on appeal.[13]

> g.   *Use of "Government Agent" to Obtain Incriminating Statements*

Steiger claims that Connie Nease, his former sister-in-law, and the mother of one of the alleged victims, acted as a "government agent" when she elicited incriminating statements from him during a telephone conversation that she recorded using equipment that had been provided to her by the FBI.  According to Steiger, because the FBI approved of

---

[13]Steiger raises separate claims that his trial and appellate counsel were ineffective for failing to properly investigate and argue issues related to his assertions that the government manufactured and altered evidence.  *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 24" at 88-91 and "Ground 25" at 92-93.  His failure to establish the merit of his underlying claim precludes him from receiving relief on the separate claims of ineffective assistance of trial and appellate counsel.

Nease's attempt to elicit and record incriminating statements from him, and even furnished Nease with the tape recorder, the statements were unlawfully obtained and the admission of the recorded conversation into evidence rendered his trial unfair. *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 26" at 94-95.

The conclusory nature of this claim precludes any relief, as Steiger fails to demonstrate a reasonable probability that, but for the admission of this evidence, the results of the proceeding would have been different. Furthermore, the record reflects that Steiger was not "in custody" at the time Nease elicited the statements from him, and Steiger had yet to be arrested, charged, or indicted. Accordingly, even assuming that Nease acted as a "government agent" in eliciting and recording the statements, the evidence was not inadmissible. *See United States v. Grimes*, 142 F.3d 1342, 1349 (11th Cir. 1998).

Because Steiger fails to establish the merit of his claim that he was denied a fair trial due to the admission of the recorded conversation, there can be no derivative merit to the claim that his appellate counsel was ineffective for failing to raise the claim on appeal.[14]

---

[14]Under the same heading in his motion, Steiger also alleges that his trial counsel was ineffective for failing to (1) move to suppress the recorded conversation on the ground that Nease was an agent of the government when recording the conversation; (2) challenge the authenticity of the recording; and (3) cross-examine Nease concerning the financial benefit that would accrue to her from a civil suit she had filed against Steiger based on injury he had caused to her daughter. However, the record reflects that Steiger's trial counsel did, in fact, move to suppress the recorded conversation on the "government agent" theory. *See, e.g., Trial Transcript*: Vol. 9 at 164-67. Thus, Steiger's allegation in this regard is not supported by the record. Moreover, Steiger's apparent concession in his § 2255 motion that the conversation took place contradicts his suggestion that the recording was not authentic. Nor does Steiger demonstrate how cross-examining Nease concerning the civil suit she had filed would have affected the outcome of his criminal trial. Thus, Steiger is not entitled to any relief based on his claim of ineffective assistance of trial counsel.

h.     *Racial Discrimination in Grand Jury Selection*

Steiger claims that he was denied a fair trial because the grand jury that indicted him was not drawn from a fair cross-section of the community and the government engaged in race-based discrimination in the selection of the grand jury foreperson.  *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 27" at 96.  There is absolutely nothing in the record to support such a claim.  His inability to demonstrate appellate counsel's ineffectiveness for failing to raise this claim on appeal follows from Steiger's complete failure to establish the substantive merit of this claim.[15]

i.     *Prosecutorial Misconduct Before Grand Jury*

Steiger argues that he was denied a fair trial due to prosecutorial misconduct before the grand jury.  *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 30" at 99-101.  His allegations of "prosecutorial misconduct" consist of unsubstantiated conclusory allegations of perjured testimony before the grand jury by FBI Agent Margaret Faulkner and reassertions of the Fourth Amendment and Wiretap Act claims that were addressed by the Eleventh Circuit in his direct appeal.  Steiger's unsupported allegations of perjury are insufficient to establish prosecutorial misconduct, and his allegations of governmental misconduct in support of his Fourth Amendment and Wiretap Act claims were rejected by

---

[15]Given the total absence of support for the underlying substantive claim, Steiger's separate claims of trial and appellate counsel ineffectiveness for failure to raise issues related to the grand jury selection process likewise provide no basis for relief.  *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 28" at 97 and "Ground 29" at 98.

the Court of Appeals.  Because Steiger fails to establish the merit of his underlying claim of prosecutorial misconduct before the grand jury, it follows that he is unable to demonstrate that his appellate counsel's failure to raise the claim on appeal fell below an objective standard of reasonableness and prejudiced him.[16]

j.    *Perjured Testimony and Manufactured Evidence*

Steiger alleges that FBI Agent Margaret Faulkner and MPD Captain Kevin Murphy committed perjury by testifying falsely during pretrial hearings, at trial, and during a post trial hearing on his motion for a new trial;[17] in addition, he restates his claim that Agent Faulkner manufactured evidence against him by placing incriminating images on various computer disks and "memory sticks."  *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 33" at 105-13.

Once again Steiger's allegations consist of nothing more than mere speculation, self-serving interpretations of the facts, and unsupported conclusions.  His bald assertions do not

---

[16]In light of the absence of any showing of meritoriousness to the underlaying claim, Steiger's separate claims that his trial and appellate counsel were ineffective for failing to raise the issue of grand jury misconduct by the prosecution, likewise, provide no basis for relief.  *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 31" at 102-03 and "Ground 32" at 104.

[17]As an example of alleged "perjury," Steiger points to Agent Murphy's failure to mention, during her pretrial and trial testimony, her unsuccessful attempts to contact the anonymous source at a United States telephone number (which turned out to be a number for a computerized "voice mail drop").  However, Agent Murphy's failure to mention this fact does not constitute false testimony.  Moreover, Steiger fails to show how the matter constituted material evidence.  Clearly, Steiger does not prove that Agent Murphy committed "perjury."

entitle him to any relief based on this claim.  Having failed to establish the merit of the

underlying claim, Steiger similarly fails to establish that his appellate counsel was ineffective

for failing to raise the claim on appeal.[18]


k.    *Unduly Suggestive Identification Procedure*

Steiger maintains that his due process rights were violated when Agent Faulkner

showed a photograph of him to personnel at his former place of employment and to the

previous owners of his home for purposes of verifying that the identifying information the

FBI had gathered from the anonymous source and the State of Alabama was indeed

connected to Bradley Joseph Steiger.  *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground

36" at 118.  He asserts that this identification procedure was unduly suggestive and argues

that investigators should have instead shown the persons consulted a photo array so as to

avoid suggesting to these individuals that he had committed a crime.  *Id*.

The government correctly responds that Steiger confuses the circumstances of his case

with situations where photo arrays or other identification procedures that are used to assist

crime victims or eyewitnesses in identifying a suspect must be reliable and not unduly

suggestive.  *See, e.g., Passman v. Blackburn*, 652 F.2d 559, 569-70 (5th Cir. 1981).  In this

---

[18]Steiger also brings separate claims that his trial and appellate counsel failed to properly investigate or raise issues related to the allegedly perjured testimony and falsified evidence.  *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 34" at 114-15 and "Ground 35" at 116-17. These separate claims of ineffective assistance entitle him to no relief, as the underlying substantive claims are baseless.

case, the individuals to whom the photograph was shown confirmed that the person in the photograph was Steiger; they did not state that Steiger had committed a crime.  Steiger's claim in this regard lacks merit.

Because the underlying substantive claim lacks merit, appellate counsel cannot be ineffective for failing to raise the claim on direct appeal.

### l.   *Violation of First Amendment Rights*

Steiger presents a confused argument that his First Amendment right of freedom of speech was violated as a result of the alleged failure of the magistrate judge who issued the search warrant to actually view the image files from his computer in order to make an independent determination of their obscenity before issuing the warrant.  *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 37" at 119-20.  However, it was not necessary for the magistrate judge to make such an independent determination of obscenity in order to find probable cause for issuance of the warrant.  Moreover, the search warrant affidavit prepared by Agent Faulkner, and reviewed by the magistrate judge, described the contents of the image files.  Steiger's First Amendment claim is patently frivolous.  Therefore, his appellate counsel was not ineffective for failing to raise the claim on direct appeal.[19]

---

[19]Under the same heading in his motion, Steiger raises separate claims that trial and appellate counsel were ineffective for "failing to investigate, raise, or preserve [this issue] for appeal." Because the issue wholly lacks merit, counsel was not ineffective for failing to pursue it.

   *m.*  *Statutory Affirmative Defense*

  Steiger argues that he was entitled to benefit from the affirmative defense provisions of 18 U.S.C. § 2252A(d) with respect to the charge in Count III of the indictment, possession of a computer or other storage media containing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).  *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 38" at 121-22.

  Section 2252A(d) provides that it shall be an affirmative offense to a charge of violating  § 2252A(a)(5) that the defendant

   (1) possessed less than three images of child pornography; and

   (2) promptly and in good faith, and without retaining or allowing any person, other than a law enforcement agency, to access any image or copy thereof --

    (A) took reasonable steps to destroy each such image; or

    (B) reported the matter to a law enforcement agency and afforded that agency access to each such image.

  Steiger plainly did not qualify under any aspect of the affirmative defense, because he (1) possessed more than three images of child pornography, (2) did not promptly destroy the images, and (3) did not report the matter to any law enforcement agency.  His claim lacks merit.  Consequently, his appellate counsel was not ineffective for failing to raise the claim on direct appeal.[20]

---

[20]In light of the underlying substantive claim's lack of merit, Steiger's separate claims, under the same heading in his motion, that his trial and appellate counsel were ineffective for failing to argue that he was entitled to the affirmative offense are likewise futile.

In his reply to the government's response to this claim, Steiger suggests that Count III failed to charge an offense because the count stated that his conduct violated 18 U.S.C. § 2252(a)(5)(B), rather than 18 U.S.C. § 2252**A**(a)(5)(B).  *See Reply to Government's Response* (Doc. # 40) at 41-42.  He maintains that since there is no "§ 2252(a)(5)(B)" in Title 18, his conviction under Count III is void and should be vacated.  *Id.*  However, "[i]t is well established that even the citation of an inapposite criminal statute in an indictment does not render a conviction based on a different statute invalid, so long as the elements of the relevant statutory offense charged are adequately described in the indictment." *United States v. Greenwood*, 974 F.2d 1449, 1472 (5th Cir. 1992); *see also United States v. Bonallo*, 858 F.2d 1427, 1430 (9th Cir.1988) ("the description of the alleged conduct is far more critical than the indictment's ... citation of a particular provision of a statute.").  Count III alleged, in pertinent part, that Steiger "did knowingly possess a computer and other storage media containing three or more images of child pornography that were produced using materials that had been mailed and shipped and transported in interstate and foreign commerce." *See "Indictment"* at 2.  This language is contained within the provisions of 18 U.S.C. § 2252A(a)(5)(B) and was clearly sufficient to charge an offense under the laws of the United States.  Thus, Steiger's claim that Count III was void for failure to charge an offense lacks merit.

*n.*     *Commerce Clause Violation*

Steiger appears to argue that 18 U.S.C. § 2252A(a)(5)(B) violates Congress's authority under the Commerce Clause because the connection between the activity proscribed by the statute and its effect on interstate commerce is too attenuated to permit federal regulation.[21]   *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 39" at 123-24. However, this same argument was expressly rejected by the Eleventh Circuit in *United States v. Maxwell*, 446 F.3d 1210, 1218-19 (11th Cir. 2006).  *See also, e.g., United States v. Forrest*, 429 F.3d 73, 78 (4th Cir. 2005).

Steiger also suggests that § 2252A(a)(5)(B) was unconstitutionally applied to him because there was an insufficient nexus between his conduct and interstate or foreign commerce.  However, the government presented evidence that the pornographic photographs were produced using cameras that had been imported into the United States from Japan.  *See Trial Transcript*: Vol. 11 at 431.  Such evidence was legally sufficient to demonstrate the necessary "interstate or foreign commerce" connection required under § 2252A(a)(5)(b).  *See, e.g., United v. Smith*, No. 03-13639, 2006 WL 2327782 (11th Cir. Aug. 11, 2006).  No constitutional violation resulted from the application of § 2252A(a)(5)(B) to Steiger.

---

[21]Section 2252A(a)(5)(B), in pertinent part, punishes "[a]ny person who ... knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer."

Once again, the failure of the underlying claim dooms the ineffectiveness claim.[22]

    o.    *Evidence Produced Using Computer-imaging Technology*

Steiger contends that the pornographic images on his computer files and other storage media did not depict actual events but were instead "virtual images" manufactured by the government through the use of computer-imaging technology and placed on his computer and other storage media by government agents or the anonymous source.[23]  *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 40" at 125.  This is merely one more variant of Steiger's unsupported allegations that the government or some other individual hacked into his computer or otherwise tampered with his storage media in order to plant fabricated evidence against him.[24]  Steiger fails to establish the merit of this wholly speculative claim; therefore, he cannot show that his appellate counsel was ineffective for failing to raise the claim on

_____

[22]Under the same heading in his motion, Steiger raises separate claims that trial and appellate counsel were ineffective for failing raise the Commerce Clause challenge; however, counsel cannot be ineffective for failing to raise a claim that lacks merit.

[23]In presenting this issue, Steiger also suggests that the district court's jury instructions were flawed because they did not require the jury to find that "real children" were depicted in the pornographic images.  However, the district court instructed jurors that it was necessary to find that the visual depictions were of minors engaged in sexually explicit conduct, that the production of such visual depictions involved the use of minors engaged in sexually explicit conduct, and that the defendant knew that such visual depictions were of such minors engaged in sexually explicit conduct.  *See Trial Transcript*: Vol. 12 at 596.

[24]In affidavits filed pursuant to orders of this court, Steiger's trial counsel and appellate counsel both state that Steiger never denied his guilt with respect to the underlying crimes or suggested that the pornographic pictures were fabricated "virtual images."  *See Affidavit of Barry Teague* (Doc. # 24) at 1; *Affidavit of Jennifer A. Hart* (Doc. # 24) at 5, 10.

direct appeal.[25]

        *p.*    *Denial of Sixth Amendment Right to Confront Witnesses*

Steiger contends that he was denied his Sixth Amendment right to confront witnesses against him because he was unable to confront the anonymous source who sent the e-mails with the attached pictures to law enforcement officers.  *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 43" at 132-35.  The e-mails and attached pictures (or digital images) were admitted into evidence at trial.  Steiger maintains that his inability to cross-examine the anonymous source about these matters deprived him of his rights under the Confrontation Clause and resulted in an unfair trial.

Steiger's claims in this regard are based on his argument that the pictures sent by the anonymous source and the statements made by the anonymous source in the e-mails constituted unreliable, inadmissible hearsay.  However, the pictures clearly did not constitute hearsay, as they were not oral or written assertions or nonverbal conduct intended as an assertion.  *See* Fed.R.Evid. 801(a)-(c).  With regard to the text of the e-mails from the anonymous source, Steiger fails to state with any specificity how such matters prejudiced him, and this court's review of the record fails to reveal matters that were unduly prejudicial

---

[25]Steiger's separate claims, which are asserted under the same heading in his motion, that his trial and appellate counsel were ineffective for failing to raise the underlying claim do not entitle him to any relief, as he has not show the merit of the underlying claim.

to Steiger.  Thus, Steiger fails to establish the merit of this claim; this precludes a finding that

his appellate counsel was ineffective for failing to raise the claim on direct appeal.[26]

> q.     *Prosecutorial Misconduct in Closing Argument*

According to Steiger, during closing argument, the prosecutor improperly appealed

to the religious bias of jurors by  "ma[king] a religious quote from the Christian Bible which

in effect stated that the 'Christian' punishment for the defendant would be to 'hang a

millstone from his neck and cast him into the sea.'"   *See § 2255 Motion* (Doc. # 1 -

Attachment A) "Ground 48" at 147.  This allegation is baseless, as a review of the record

reflects that the prosecutor made no such reference or allusion to the Christian Bible, or to

"Christian punishment," during closing argument.[27]

Steiger also maintains that elsewhere during closing argument, the prosecutor made

an improper statement that was not supported by the evidence and was highly prejudicial.

*See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 48" at 148.  Steiger alleges that the

---

[26]Steiger also presents separate claims that his trial counsel was ineffective for allowing the admission of the e-mails and attached pictures and that his appellate counsel was ineffective for failing to argue that trial counsel was ineffective in this regard.  *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 44" at 136-39 and "Ground 45" at 140.  However, Steiger's failure to establish the merit of his underlying claim precludes any relief based on the separate claims of ineffective assistance of trial and appellate counsel.

[27]At Steiger's *sentencing hearing*, the prosecutor remarked that "[t]here is ancient authority that folks who do bad things to little children should have millstones put around their necks and have them drowned in the deepest part of the ocean."  *See Sentencing Hearing* at 55.  Of course, this remark was not heard by the jury and could not have affected the outcome of Steiger's trial.  In any event, the prosecutor stated that such punishment was not appropriate for Steiger.  *Id.*

improper statement related to comments by the prosecutor that, in one of the pictures admitted into evidence, Steiger's penis could be seen brushing up against the body of the child, C.N.  Steiger argues that no image produced at trial showed his penis touching the child and that no reasonable inference could be drawn from any of the images that such touching in fact occurred.

Steiger raised a claim to this effect in a motion for a new trial, and the district court found that the evidence supported the prosecutor's statement because one of the pictures admitted into evidence, Government Exhibit 4, arguably showed Steiger's penis brushing up against C.N.'s foot.  *See 17 September 2001 "Memorandum Opinion and Order"* (Case No. 2:00CV170-WHA - Doc. # 192) at 5-6.  The district court further found that, in the context of the record as a whole, the statement was not directed to the passions or prejudices of the jurors, but rather was directed to an understanding of the facts.  *Id*. at 6.  The district court noted that, prior to the prosecutor making this statement, Steiger's counsel in his closing argument argued that there was insufficient evidence to indicate that any sexual activity occurred between Steiger and C.N. to convict Steiger on Count VI of the indictment.

To prove Count VI, the government had to prove that Steiger transported C.N. in interstate commerce with the intent that C.N. engage in sexual activity for which Steiger could be charged with a criminal offense.  Thus, the district court found that the prosecutor made the statement to counter defense counsel's argument that the evidence did not show any sexual activity.  *Id*.  The district court concluded that the prosecutor's statement did not

introduce any error into Steiger's trial.  *Id*.

Steiger does not present this court with any argument suggesting how the district court's ruling on this issue was incorrect.  Accordingly, he has failed to show that this claim entitles him to any relief.  As a result, he cannot show that appellate counsel was ineffective for failing to raise this claim on direct appeal.


        r.     *Court's Lack of Jurisdiction Due to Insufficiency
            of Evidence to Support Indictment*

Steiger asserts that the district court was without subject matter jurisdiction to try him because the evidence presented to the grand jury was insufficient to charge him with a crime. *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 57" at 185-86.  His argument is based solely on reassertions of (1) his Fourth Amendment and Wiretap Act claims which were decided adversely to him by the Court of Appeals and are thus not subject to reconsideration by this court; (2) his Commerce Clause claim, which this court has found to be without merit; and (3) his many unsupported allegations, discussed *supra*, that the government fabricated evidence against him.  Steiger's restatement of claims litigated in his appeal and other meritless arguments fails to support his claim that the district court was without jurisdiction to try him.  It follows that Steiger is unable to demonstrate that his appellate counsel was ineffective for failing to raise this claim on direct appeal.

*s.*      *Sufficiency of Evidence to Support Convictions*

Steiger reasserts the arguments underlying his claim that the district court was without jurisdiction to try him and contends that these same arguments establish that the evidence presented to the petit jury was insufficient to support his convictions. *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 58" at 187. Because the arguments underlying this claim were rejected by the Court of Appeals or have otherwise been found to be meritless, Steiger's claim that the evidence was insufficient to support his convictions should be rejected, as well as the argument that his appellate counsel was ineffective because he failed to raise this claim on appeal.

*t.*      *Consent to Court's Jurisdiction*

Steiger contends that he did not consent to this court's jurisdiction to try him and that he never "knowingly, voluntarily, and intentionally enter[ed] any contract or commercial agreement with the federal government" to be tried. *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 59" at 188. This argument is wholly specious and unworthy of analysis. It is meritless and provides no basis for a finding of ineffectiveness.

*u.*      *Sentencing Errors*

Steiger asserts the following claims as sentencing errors in his case:

1.      "The district court's method of imposing the sentence was by improper application of upward departures pursuant to the

sentencing guidelines applicable to the instant case."

2.   "The court improperly imposed the sentence by failing to grant appropriate downward departures."

3.   "The court has imposed a sentence which violates 'due process grounds' pursuant to the Wiretap Act, Constitutional Amendments 4, 5, 6, and denial of meaningful access to the courts."

4.   "The court has used an 'improper formula' to arrive at the sentence which was unbeknownst to the defendant."

5.   "The court has 'incorrectly applied to sentencing guidelines' to arrive at the sentence."

6.   "The court has considered inappropriate factors in determining the sentence."

7.   "The prosecution and sentence has been predicated upon a motive of retaliation due to the relationship of the defendant to the alleged victims and family members to include Ms. Nease, and the defendant's wife's in-laws who are politicians in the U.S. Government and have exerted influence upon the court to sustain the conviction in order to win a civil suit against the defendant, and the defendant's exercising of his constitutional rights."

8.   "The sentence has been based on erroneous and material information and assumptions in violation of due process."

9.   The court lacked jurisdiction to sentence the defendant based on insufficient evidence [and] the unlawful use of evidence obtained through an unlawful act of electronic surveillance."

*See* § 2255 Motion (Doc. # 1 - Attachment A) "Ground 60" at 190-91.

Steiger presents no argument or facts in support of these claims.  As is apparent,

several of the claims do not raise sentencing issues at all, but are restatements of Steiger's

claims, rejected by the Court of Appeals, that the Government violated the Fourth Amendment and the Wiretap Act in his case.  Steiger's claim that his sentence was predicated upon retaliation amounts to a bald, unsupported assertion.  Steiger's allegation notwithstanding, the district court did *not* apply an upward departure in sentencing Steiger. Steiger received a sentence within the applicable guideline range, and he fails to suggest how the district court incorrectly applied to sentencing guidelines to arrive at his sentence. Consequently, Steiger is not entitled to relief based on the claimed sentencing errors, and his counsel's failure to assert such claims on appeal cannot reasonably be deemed ineffective.

### 2.    Other Independent Claims of Ineffective Assistance

Steiger also asserts the following independent claims of ineffective assistance of counsel.

### a.    Trial Counsel's Failure to Sufficiently Investigate Identity of Anonymous Source

Steiger contends that his trial counsel rendered ineffective assistance by failing to conduct sufficient investigation – including consultation of computer experts, hiring of investigators, and use of "tracing procedures" – into the identity of the anonymous source, "despite having a strong personal belief that the [anonymous source] was an actual government agent."  See § 2255 Motion (Doc. # 1 - Attachment A) "Ground 4" at 17-19.

Steiger's oft-repeated allegation that the anonymous source was actually a government

agent and that the prosecution was concealing this fact from the defense amounts to little more than his own speculative and unsupported conclusion. Accordingly, Steiger fails to establish that he was prejudiced by his trial counsel's failure conduct the kind of investigation into the anonymous source's identity that Steiger believes should have been conducted. Steiger's failure to establish any prejudice resulting from counsel's performance precludes a finding that counsel's representation was ineffective.

> b. *Trial and Appellate Counsels' Failure to Investigate and Properly Argue the Issue of Whether the Anonymous Source Possessed Evidence Obtained from Steiger's Computer Before He Contacted Captain Murphy*

Steiger claims that his trial counsel was ineffective for failing to conduct sufficient investigation into the question of whether the anonymous source did in fact possess the incriminating image files obtained from Steiger's computer before he contacted MPD Captain Kevin Murphy about them. *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 7" at 30. In addition, Steiger maintains that counsel failed to effectively present the district court with the issue of Captain Murphy's "conversion" of the anonymous source's actions into those of an "agent of the government." *Id*.

Steiger argues that had trial counsel conducted a sufficient investigation into the matter and properly presented the issue to the district court, "the outcome of the trial would have been different, as the 'central question' would have been answered properly, that the

42

[anonymous source] was acting as an agent of CPT Murphy when the [anonymous source] seized the files and transferred them to the MPD after CPT Murphy requested the files." *Id*. Under the same heading in his motion, Steiger also argues that his *appellate* counsel rendered ineffective assistance by failing to properly investigate this issue and by failing to argue the issue effectively when raising it on appeal. *Id*. at 30-31. In particular, Steiger argues that appellate counsel should have moved for an evidentiary hearing on the issue before the Eleventh Circuit and should have filed a petition for rehearing en banc after the Court of Appeals decided the issue adversely to Steiger. *Id*.

With the exception of his insinuation of the possible existence of some new, unspecified evidence bearing on this matter, Steiger, by this claim, is essentially attempting to relitigate issues that were decided against him by the Court of Appeals. That court found that the anonymous source possessed the evidence obtained from Steiger's computer before Captain Murphy asked the anonymous source to forward the evidence to him. *See United States v. Steiger*, 318 F.3d 1039, 1045-46 (11th Cir. 2003).

Because Steiger presents no new relevant, material evidence, his suggestion that the facts relevant to this claim were otherwise than as found by the Court of Appeals is speculative and therefore meritless. Moreover, Steiger fails to show that further investigation by counsel, or the presentation of some different argument, would have affected the outcome of the proceedings. Steiger's failure to demonstrate prejudice is fatal to his claim that his trial and appellate counsel rendered ineffective assistance in this regard.

43

c.    *Trial and Appellate Counsels' Failure to Properly Investigate and Argue Issues Related to Deficiencies in Search Warrant Affidavit*

Steiger contends that his trial and appellate counsel failed to properly investigate and argue issues concerning alleged omissions and misrepresentations in the search warrant affidavit submitted to the magistrate judge by FBI Agent Margaret Faulkner. *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 10" at 45-47 and "Ground 11" at 48.

In support of this claim, Steiger suggests that images obtained from his computer by the anonymous source may have been altered by someone and that innocent images of him were used to create the pornographic images that were part of the basis for the magistrate judge's finding of probable cause for issuance of the search warrant. Steiger argues that additional investigation by trial and appellate counsel would have uncovered evidence that the images obtained from his computer had been altered. As noted earlier in this Recommendation, however, Steiger's allegation that evidence was fabricated against him amounts to mere speculation.

Absent substantiation of his allegation of fabricated evidence, Steiger's claim of ineffective assistance amounts to little more than an attempt to revisit issues that were decided adversely to him by the Court of Appeals, which held that the magistrate judge's probable cause determination was correct. Steiger fails to establish the validity of his wholly speculative allegation of fabricated evidence; therefore, he cannot show that his trial and appellate counsel rendered ineffective assistance by failing to properly investigate or argue

issues concerning alleged omissions and misrepresentations in the search warrant affidavit.

> d.  *Trial and Appellate Counsel's Failure to Properly Investigate and Argue the Claim That Captain Murphy's Opening and Viewing of Image Files from Steiger's Computer Was an Unlawful Warrantless Search*

Steiger maintains that his trial and appellate counsel were ineffective for failing to properly investigate and argue the claim that Captain Murphy's opening and viewing of image files from Steiger's computer that were sent to Captain Murphy by the anonymous source as e-mail attachments amounted to an unlawful warrantless search.  According to Steiger, Captain Murphy could not lawfully open and view the image files without first obtaining a search warrant.  *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 15" at 60-61 and "Ground 16" at 62-63.

Both trial counsel and appellate counsel raised this claim; it was rejected by both the district court and the Court of Appeals.  The Court of Appeals specifically found that the anonymous source possessed and viewed the image files obtained from Steiger's computer before Captain Murphy asked the anonymous source to forward such evidence to him and that, therefore, the evidence was obtained through a search by a private actor and not the government.  *See United States v. Steiger*, 318 F.3d 1039, 1045-46 (11th Cir. 2003).

The Fourth Amendment guards against unreasonable searches and seizures conducted by the government; it does not protect against searches that are conducted by private persons

without the government's involvement.  *See United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *United States v. Ford*, 765 F.2d 1088, 1090 (11th Cir. 1985).  "[O]nce a private search is completed, the subsequent involvement of government agents does not retroactively transform the original intrusion into a governmental search."  *United States v. Sherwin*, 539 F.2d 1, 6 (9th Cir. 1976).  Moreover, "[a]bsent police involvement prior to or during the search conducted by a private person, subsequent acceptance of evidence found does not eliminate the private character of the search."  *Id*. at 9 (Chambers, J., concurring). Consequently, Captain Murphy's opening and viewing of the image files sent to him by the anonymous source did not amount to a search for purposes of the Fourth Amendment, and it was not necessary for Captain Murphy to first obtain a warrant.  *See Jacobsen*, 466 U.S. at 115-20.

Because Steiger's warrantless search argument lacks merit, he fails to show that trial and appellate counsel rendered ineffective assistance in this regard.

> e.   *Trial Counsel's Failure to Challenge the Testimony of Witnesses Identifying the Victims and Expert Testimony Indicating That One of the Victims Had Been Drugged*

As part of the government's foundation for admitting the pictures into evidence, the mothers of the two minor victims identified their daughters as the persons depicted in pictures printed from sexually explicit image files obtained from Steiger's computer and other storage media.  Steiger claims that the victims' mothers were not properly qualified to

identify their daughters as the persons depicted in the pictures.  *See § 2255 Motion* (Doc. #
1 - Attachment A) "Ground 46" at 141-45.  In this regard, Steiger maintains that the victims'
mothers had no basis of knowledge to testify that the exposed genitalia of the victims
depicted in the pictures were actually those of their respective daughters and, therefore, they
were unqualified as witnesses for purposes of identifying the victims.  *Id*. at 141-42.  He
further argues that the victims' mothers were not qualified to testify that the pictures of their
daughters were authentic and not "virtual images" fabricated through the use of computer-
imaging technology.  *Id*.  Steiger then asserts that his trial counsel was ineffective for failing
to challenge the victims' mothers' testimony – and the admission of the pictures – on these
grounds.  *Id*.

        Steiger's claim is frivolous.   The victims' mothers sufficiently identified their
daughters based on various physical characteristics that were apparent in the pictures.  They
were also able to identify the different locales where the pictures had been taken.  *See, e.g.,*
*Trial Transcript*: Vol. 9 at 154-57; Vol. 10 at  293, 296-97.  The suggestion that the victims'
mothers were not qualified to identify the victims is absurd.[28]  Further, Steiger presents only
his own self-serving and unsupported allegations that the sexually explicit pictures of the
victims were fabricated through the use of computer-imaging technology.  Merely raising the
possibility of tampering is insufficient to render evidence inadmissible.  *See United States*

--------

[28]As the government suggests in its response to Steiger's claim, "trial counsel may well have
considered the jury impact of the [victims' mothers] trying to identify the genitalia of their pre-
pubescent daughters to satisfy Steiger's contention that the images were not actually [of] their
children."  *See "United States' Response to § 2255 Motion"* (Doc. # 25) at 29.

*v. Allen*, 106 F.3d 695, 700 (6th Cir. 1997).   Absent specific evidence of tampering, allegations that computer data has been altered goes to its weight, not admissibility.  *See United States v. Bonallo*, 858 F.2d 1427, 1436 (9th Cir. 1988).  Any attempt by trial counsel to challenge the identification of the victims by their mothers, or the admissibility of the pictures, on the grounds asserted by Steiger would have proven fruitless.  Therefore, Steiger fails to demonstrate trial counsel's ineffectiveness in this regard.

Steiger also argues that his trial counsel should have challenged the expert testimony of Dr. Jeffery Plagenhoef, a physician and board-certified anesthesiologist, who opined that in one of the pictures, one of the victims exhibited symptoms of having been drugged with some type of general anesthetic.  *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 46" at 142-43.  Steiger maintains that Dr. Plagenhoef had no basis for drawing such a conclusion based on his review of a picture that may have been fabricated through the use of computer-imaging technology.  However, consistent with his pattern in this case, Steiger has presented nothing to substantiate his suggestion that his computer files were tampered with in this manner or that the pictures in question were fabricated.  This court finds no basis for challenging Dr. Plagenhoef's testimony on the grounds asserted by Steiger.

> f.    *Ineffective Assistance "Possibly Related to the Mental Illness of Trial Counsel"*

Steiger claims that at critical times during the proceedings, his trial counsel's mental faculties seemed not to be fully present and that counsel would often "blank out" when

consulting with him about some "highly technical or complex" matter or have difficulty understanding "the fine points of some of the evidentiary issues dealing with the computer evidence, electronic surveillance over the internet, and digital image technology." *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 42" at 130-31.  According to Steiger, it is his belief that "trial counsel's failure to grasp the significance of the issues raised during trial was contributed to by the early onset of Alzheimer's disease, senile dementia, or some other form of mental illness." *Id*. at 130.  Had counsel not been affected by such mental illness, Steiger says, counsel "would have consulted computer experts, performed the proper investigations into the identity of the anonymous source in a timely manner, pursued formal discovery of evidence held by the government, performed proper cross-examination of the government witnesses and taken proper advantage of their testimony[,] ... made proper motions for extensions of time to investigate and present claims based upon the government's piecemeal disclosures, properly presented exculpatory evidence, laid a proper foundation for evidentiary admission, raised proper objections, and preserved issues for appeal." *Id*. at 130-31.

There is nothing before this court to support Steiger's self-serving diagnosis that trial counsel was suffering from the onset of Alzheimer's disease or any other form of mental or physical illness or impairment.  Moreover, Steiger is required to show that he was prejudiced by counsel's actual conduct.  *See Strickland*, 466 U.S. at 690; *see also Smith v. Ylst*, 826 F.2d 872, 976-77 (9th Cir. 1987) (counsel's mental illness and subsequent replacement during trial

did not constitute ineffective assistance of counsel when defendant did not show how counsel's action prejudiced him).  Other than to restate many of the claims that have been discussed throughout this Recommendation, Steiger fails to identify any specific facts or errors that demonstrate counsel's ineffectiveness, and critically, he fails to demonstrate any prejudice to him flowing from counsel's conduct, thus foreclosing his claims.

g.    *Functional Denial of Counsel*

Steiger maintains that he was deprived of a fair trial due to "the functional denial of counsel."  *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 41" at 126-29.  According to Steiger, the district court "essentially forced" him to accept representation by ineffective counsel.  *Id*. at 127-28.

On the day the trial was scheduled to begin, Steiger, citing a litany of complaints about his retained counsel's representation, informed the district court that he wished to fire counsel.  The court then advised Steiger that he could either (1) proceed with his current counsel representing him, (2) proceed without counsel and represent himself, or (3) move for a continuance so that he could obtain new counsel and allow the new counsel time to prepare his defense.  *See Trial Transcript*: Vol. 9 at 86.  The court further advised Steiger that if he could not afford to hire new counsel, the court would appoint counsel.  *Id*.  The court also informed Steiger that if he were to be granted a continuance to obtain new counsel, the trial would "proceed at a later date, which might be substantially later."  *Id*.

50

Steiger initially responded that "[i]f, in order to have my Fourth Amendment rights back and have this entire process that took place by the government looked at under Fourth Amendment issues, then I will request a continuance and adequate representation." *Id*. at 87. Addressing Steiger's reference to "adequate representation," the court advised Steiger that if new counsel were appointed, the lawyer would be from the Federal Defenders Office, and "it would not be up to you to decide whether you think that counsel is adequate." *Id*. at 88. The court reminded Steiger that whether new counsel was retained or appointed, "it would take some time for the lawyer to be brought up to speed for you." *Id*.

The court then asked Steiger which of the options that had been enumerated by the court he wished to choose. *Id*. at 89. After giving the court several evasive answers and conferring twice with his current counsel, Steiger ultimately advised the court that he wished to proceed with his current counsel. *Id*. at 94.

The record does not support Steiger's claim that the district court "essentially forced" him to accept representation by the counsel who represented him at trial. The district court clearly explained the various options available to Steiger, two of which would not have involved representation by that same counsel. Furthermore, the district court was correct in advising Steiger that if new counsel were appointed, the determination of whether new counsel was adequate would not be left to Steiger alone. A criminal defendant with appointed counsel does not have a right to have a particular lawyer represent him, *see Morris v. Slappy*, 461 U.S. 1 (1983), nor to demand a different appointed lawyer except for good

cause.  *See United States v. Young*, 482 F.2d 993, 995 (5th Cir. 1973).  Good cause for

substitution of counsel cannot be determined "solely according to the subjective standard of

what the defendant perceives."  *McKee v. Harris*, 649 F.2d 927, 932 (2nd Cir. 1981).  Steiger

was not "forced" to proceed with his current counsel; in fact, the district court demonstrated

considerable forbearance by presenting him with the option of a continuance so that he could

obtain new counsel.

      Steiger also asserts that, under the circumstances, where he had expressed his

dissatisfaction with counsel,  the district court erred by failing to hold a "*Faretta* hearing."[29]

*See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 41" at 127.  However, a *Faretta*

hearing was not required because Steiger never clearly expressed a desire to represent

himself.  *See, e.g., Orazio v. Dugger,* 876 F.2d 1508, 1512 (11th Cir. 1989).

      Finally, Steiger tosses under this heading in his motion a vague allegation that the

counsel who represented him at trial had a financial motive for his conviction.  *See § 2255*

*Motion* (Doc. # 1 - Attachment A) "Ground 41" at 128-29.  However, he fails to set forth

sufficient facts to merit further consideration of this claim.

      For the reasons indicated above, Steiger is not entitled to any relief based on his

"functional denial of counsel" claim.

      *h.*     *Appellate Counsel's Failure to Appeal District*

---

[29]*Faretta v. California*, 422 U.S. 806 (1975).

*Court's Evidentiary Decisions and Other Issues*

Steiger makes a generalized claim that his appellate counsel was ineffective because she "failed to appeal any of the meritorious evidentiary issues preserved by trial counsel." *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 47" at 146.  Other than the issues that are discussed throughout this Recommendation, Steiger does not point the court to any other errors that might have been raised on direct appeal.[30]  Thus, Steiger has failed to demonstrate prejudice.

> i.      *Appellate Counsel's Failure to Appeal District Court's Denial of Motion for New Trial*

Steiger contends that his appellate counsel was ineffective for failing to appeal the district court's denial of his 22 November 2002 motion for a new trial, which was based on newly discovered evidence.  *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 55" at 183.  However, Steiger fails to set forth any grounds for such an appeal.  Moreover, Steiger's

---

[30]Under this heading in his motion, Steiger also suggests that appellate counsel was ineffective for "fail[ing] to present trial counsel's failures or to properly challenge trial counsel's failures as outlined in Ground 46."  *See § 2255 Motion* (Doc. # 1 - Attachment A) "Ground 47" at 146.  In Ground 46 of his motion (discussed *supra*), Steiger alleges that his trial counsel was ineffective for failing to properly challenge (1) the testimony of the victims' mothers' identifying the victims as the persons depicted in sexually explicit pictures obtained from Steiger's computer and (2) the testimony of a physician that one of the victims appeared to be drugged in one of the pictures. However, Steiger's appellate counsel cannot be faulted for not raising ineffective assistance of counsel issues on direct appeal.  Generally, claims of ineffective assistance of counsel are not consider for the first time on direct appeal in a federal criminal case.  *See United States v. Arango*, 853 F.2d 818, 823 (11th Cir. 1988); *see also United States v. Frazier*, 89 F.3d 1501, 1503 n.1 (11th Cir. 1996).  In any event, this court has found the claims presented in Ground 46 of Steiger's motion to lack merit.

appellate counsel addresses Steiger's claim in this regard as follows:

> The decision not to appeal the denial of the Motion for New Trial was made, not by this affiant, but as previously noted, by Mr. Steiger himself.  What was explained to Mr. Steiger regarding a possible appeal was that the issue before the Court was limited; it would not provide an avenue for again raising all of the issues concerning the Wiretap Act and the other issues previously raised on appeal.  Mr. Steiger explained that he was anxious to have a number of issues regarding the ineffectiveness of his trial counsel addressed by the Eleventh Circuit.  I explained to him that these issues could not be raised in an appeal of the denial of a Motion for New Trial.  Mr. Steiger then made the determination to forego the appeal and file a 2255 motion.

*Affidavit of Jennifer A. Hart* (Doc. # 24) at 11.

Steiger does not refute the representations made by appellate counsel in her affidavit. In light of counsel's unrefuted statements and Steiger's failure to assert any grounds for an appeal of the denial of his motion for new trial, this court concludes that Steiger is not entitled to any relief based on this claim.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the motion to vacate his sentence, filed pursuant to 28 U.S.C. § 2255 motion, be DENIED.  For the aforestated reasons, none of Steiger's claims entitled him to relief.

It is further

ORDERED that the parties shall file any objections to this Recommendation **on or before 20 September 2006.**  A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections

will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, en banc).

Done this 7th day of September, 2006.


/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE